WINNIFRED R. SALMONS v. St. JOSEPH & GRAND ISLAND RAILROAD COMPANY, Appellant.

Division One, July 2, 1917.

1. WITHDRAWAL OF EVIDENCE: Error Not Raised by Motion for New Trial. Any error in permitting respondent to withdraw his answer to a question after defendant had objected to the same is not raised by an assignment in the motion for a new trial that the court admitted incompetent testimony offered by plaintiff. A complaint of the admission of evidence cannot be said to raise a question as to the effect of evidence actually excluded.

2. ERRONEOUS EVIDENCE: Plaintiff's Family: Prompt Withdrawal. A prompt withdrawal of evidence erroneously admitted and an oral direction by the court to the jury not to consider it, cures any error in getting it before the jury unless exceptional circumstances attend its admission. And where plaintiff, suing for personal injuries, was asked what family he had, to which question objection was made, and the court remarked that the statute was both penal and compensatory, and plaintiff answered

that he had a wife and one child, whereupon defendant made a full and specific objection, and plaintiff's counsel asked to withdraw the answer, and the court stated to the jury that the answer was withdrawn and directed them not to consider the testimony and the written instructions given on the measure of damages specifically confined the elements of damage to the injuries to plaintiff's person and further told the jury they must obey the instructions as the law of the case, there was no error in permitting the withdrawn erroneous testimony to come before the jury, for there were no exceptional circumstances taking it out of the rule that, ordinarily, the withdrawal of erroneously admitted evidence leaves no ground for reversal on account of its admission.

3. NEGLIGENCE: Sudden Stop of Train: Uncoupling Air-Hose: Presumption Upon Presumption. A train was backing in upon a sidetrack preparatory to being cut in two. A brakeman was ordered to get upon the caboose in order that he might observe and signal the train's approach to cars already on the track. As the train backed in on the siding he gave an "easy" signal, and the speed was reduced to five or six miles an hour. In a few moments the conductor, who was on the ground near the middle of the train, signaled for a stop, and his order was obeyed so suddenly that the brakeman was thrown violently from the center of the top of the caboose over its rear end and fell upon the track. His petition charged that the stop was made "carelessly, negligently and suddenly, with unnecessary violence and in disregard of the usual custom and practice." The engineer testified he applied the air-brakes and the conductor that he uncoupled the air-hose. Held, (1) that there was evidence that an employee of defendant was in a position to uncouple the air-hose, and testimony by plaintiff that uncoupling the air-hose sets all the brakes back of that point and "stops the train right there" did not amount to basing one presumption upon another, and (2) the allegations were sufficiently broad to let in the evidence.

4. ———: Instruction: Facts Not Shown in Evidence. An instruction on the measure of damages telling the jury that "you should take into consideration, in connection with all the circumstances and facts in the evidence, the bodily pain," etc., does not permit the jury to consider facts not shown in evidence.

5 ———: ———: Authority to Find Amount Sued for. An instruction telling the jury to reasonably compensate plaintiff for the injuries received, "not to exceed $25,000," which was the amount asked for by the petition, is not, because it contains the words "not to exceed $25,000," reversible error.

6. ———: ———: Common Error, An instruction, in every material respect in which it is not similar to an instruction asked by defendant is supplemented and aided by such instruction, is not misleading, and need not be reviewed.

7. ———: Excessive Verdict: $10,000. A brakeman was thrown from the center of the top of a caboose over its rear end by a sudden stop of the train. For two months he was treated at home by the railroad's physician, then was sent to a hospital for twelve days, and then was under the same treatment at home again for a week. Since then he has walked on crutches. The injury is to the knee. There was testimony that there is a bony growth in the joint which prevents the knee from being straightened, that he cannot flex his knee and never will be able to do so, that an operation would give no relief, and that he will never be free from pain. *Held*, that a judgment for $10,000 is not excessive.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen*, Judge.

AFFIRMED.

*Robert A. Brown* and *Richard L. Douglas* for appellant.

(1) The verdict of the jury is grossly excessive under all the decisions of this court, and is larger by one-fourth than any verdict ever approved by this court for the entire loss of a leg. Kinney v. Met. St. Ry. Co., 261 Mo. 97; Farrar v. Met. St. Ry. Co., 249 Mo. 210; Lessenden v. Railroad, 238 Mo. 247; Yost v. Railroad, 245 Mo. 219; Ostertag v. Railroad, 261 Mo. 457; Applegate v. Railroad, 252 Mo. 173. The verdict is so grossly excessive under all the evidence in the case that it cannot be reconciled with honest motives, and can only be accounted for on the ground of prejudice and passion or misconduct on the part of the jury. Under such circumstances the *remittitur* of $2,500 under compulsion of the trial court does not even palliate the error, and the vice can only be cured by a new trial. Longan v. Weltmer, 180 Mo. 322; Chlanda v. Transit Co., 213 Mo. 244; Partello v. Railroad, 217 Mo. 645; Gibney v. Transit Co., 204 Mo. 704; McGraw v. O'Neill, 123 Mo. App. 691. (2) The verdict is contrary to the great weight of the evidence in the case on the issue of negligence, and this fact, in connection with the outrageously excessive verdict following the prejudicial errors in admission of evidence and in instructing the jury, renders a new trial impera-

tive. Kinney v. Met. St. Ry., 261 Mo. 116.   (3)
Respondent was permitted to testify, over the objec-
tions and exceptions of the appellant, that he was
married, and had a wife and one child.   The ad-
mission of such evidence has always been held to be
reversible error, since it inevitably tends to inflame the
sympathies of the jury and tends to swell the verdict.
beyond the lawful bounds of compensation for the inju-
ries sustained by the plaintiff.   Williams v. Railroad, 123
Mo. 573; Dayharsh v. Railroad, 103 Mo. 570; Mahaney v.
Railroad, 108 Mo. 191; Stephens v. Railroad, 96 Mo. 207;
Torreyson v. United Rys., 144 Mo. App. 626; Railroad
Co. v. Musgrove, 89 S. E. (Ga.) 767; Lacorazza v. Can-
talupo, 210 Fed. 875, 127 C. C. A. 459; Railroad v. Mc-
Mican, 194 Fed. 393, 114 C. C. A. 311; Railroad v. Roy,
102 U. S. 451.   The poisonous effect of this prejudicial
and improper evidence cannot be, and in this case obvi-
ously was not, counteracted by the instruction to the jury
that the evidence was withdrawn and should not be con-
sidered.   Such error can only be cured by a new trial.
Stauffer v. Railroad, 243 Mo. 305; Wojtylak v. Coal Co.,
188 Mo. 260; Neff v. Cameron, 213 Mo. 350; Trent v.
Printing Co., 141 Mo. App. 437; Self v. White, 169 Mo.
App. 709; Glenn v. St. Ry. Co., 167 Mo. App. 109.   (4)
The court erred in permitting respondent to testify, over
the objections and exceptions of the appellant, that it
would have been possible to cause the violent stopping
of the train, to which he testified, by cutting or discon-
necting the air-hose at some point in the train while it
was in motion.   The only possible evidence of negligence
in the case is that presumptively supplied by the fact of
the stopping of the train in the manner claimed by re-
spondent, and there is not a scintilla of evidence that any
member of the train crew was in a position where it
would have been possible to cut or disconnect the air
hose in this case, and the introduction of this evidence
is a mere attempt to base a *presumption* on another *pre-
sumption* or *speculation* not even founded on the evi-
dence.   This is erroneous.   Fink v. Railroad, 161 Mo.
App. 326; Trigg v. Land Co., 187 Mo. 227; Beebe v.

Transit Co., 206 Mo. 442; Kane v. Railroad, 251 Mo. 30. (5) Respondent's intruction numbered two given by the court over the objections and exceptions of the appellant is erroneous in two respects. (a) The instruction authorizes and directs the jury to consider matters not shown in evidence in arriving at their verdict, and the magnitude of the verdict which they returned indicates that they obeyed the instruction in this repsect. For this error the cause should be reversed. Keeline v. Sealy, 257 Mo. 498; Crow v. Railroad, 212 Mo. 589; Scheurer v. Rubber Co., 227 Mo. 347; Degonia v. Railroad, 224 Mo. 564; Wellmeyer v. Transit Co., 198 Mo. 527. (b) The instruction is erroneous for the reason that it contains a "judicial hint" that a verdict for $25,000 would have the approval of the court. It is well settled that it is not proper in instructing the jury to intimate that they may find a verdict in a sum many times the amount justified by the evidence.. Kinney v. St. Ry., 261 Mo. 115; Ostertag v. Railroad, 261 Mo. 457, 479; Lessenden v. Railroad, 238 Mo. 247; Applegate v. Railroad, 252 Mo. 173. (6) Respondent's instruction numbered six on the credibility of the witnesses is erroneous in that it authorized the jury to discount the effect of the testimony of the witnesses on account of matters not shown in evidence. .Keeline v. Sealy, 257 Mo. 498.

*Culver & Phillip* for respondents.

(1) The verdict of the jury was not so grossly excessive as to show passion and prejudice. The evidence clearly establishes the fact to be that this plaintiff must go through life with a useless leg and that he will suffer constantly more or less pain. Kinney v. Metropolitan St. Ry. Co., 261 Mo. 97. (2) The verdict is not contrary to the great weight of the evidence as appellant contends. The rule is that this court will not determine the weight of the evidence where it is conflicting and the trial court has approved the verdict. Nephler v. Woodward, 200 Mo. 185; McNulty v. Railroad, 203 Mo. 479. (3) The court did not err in admitting testimony as to the manner in which the train could have been stopped,

including what effect the disconnecting or uncoupling of the air hose would have on the stopping of the train. It was shown by the undisputed evidence that the only way the train could be stopped suddenly and violently was by uncoupling the air or by the act of the engineer in making a sudden or emergency application of the air to the brakes. That it was the application of the air that stopped the train is shown absolutely by the testimony of defendant's conductor. Furthermore, the petition alleges merely that defendant's agents and servants suddenly stopped the train with great violence. It does not allege specifically how it was done. This is sufficient and it was unnecessary to plead the evidence. Appellant says that the instruction should have told the jury to determine the injuries *"as shown by the evidence"* and not *"in connection with all the circumstances and facts in evidence."* There is no difference between what is "shown by the evidence," and "the circumstances and facts in evidence." But even if the instruction for damages was likely to be misunderstood, it was the duty of appellant to ask a modification or explanation in an instruction of its own. Fisher v. Transit Co., 198 Mo. 591; Taylor v. Iron Co., 133 Mo. 349; Geisman v. Electric Co., 173 Mo. 654. (4) It is the law that the stopping of a train with extraordinary violence is negligence. Farmer v. Railroad, 178 Mo. App. 579; Allison v. Railroad, 157 Mo. App. 72; Hedrick v. Railroad, 195 Mo. 104.

BLAIR, J.—Respondent is a railroad brakeman and was injured by being thrown from a car upon which he was riding in the course of duty. The jury returned a verdict for $12,500. The trial court required a *remittitur* of $2500 and rendered judgment for $10,000. The railroad company appealed.

The train upon which respondent was working was engaged in interstate commerce. It had reached Stouts, Kansas, and was backing in upon a sidetrack preparatory to cutting the train in two for the purpose of doubling a hill or grade east of Stouts. Respondent was ordered to get upon the caboose in order that he might ob-

serve and signal the train's approach to cars already upon the siding. The operation occurred about 5:15 on a December morning. Respondent attached a fusee to the rear of the caboose and assumed his position on top of the car. As the train backed into the siding he gave a slow or "easy" signal, and the speed was reduced to five or six miles per hour. In a few moments the conductor, who stood upon the ground near the middle of the train, signaled for a stop. This order, .the evidence tends to show, was obeyed in such a sudden manner that respondent was thrown violently from the center of the top of the caboose over its rear end and fell upon the track, sustaining the injuries for which he sues. Other facts necessary to a decision are stated in the course of the opinion.

I.   Respondent was asked what family he had. Counsel for appellant said: "That is objected to as incompetent." The court, responding to the suggestion that the statute was both penal and compensatory, overruled the objection. Respondent said he had a wife and one child. Other questions concerning other matters were put and answered. Appellant's counsel then offered a second objection, full and specific, to the question concerning respondent's family.. Upon hearing this objection respondent's counsel asked to withdraw the answer as to respondent's family. To this appellant objected. Counsel for respondent stated: "Well, we didn't hear his objection at first; and when we heard his objection, we want to withdraw it." The court then stated to the jury that the answer was withdrawn and, at the time, specifically directed the jury not to consider that testimony. Appellant excepted. In respondent's instruction on the measure of damages the elements of damage are specifically stated and none concerns anything except the injuries to respondent's person. In an instruction given at appellant's instance the jury are told that the instructions given "declare the law to govern your action in this case. They are not to be disregarded by you at your pleasure, but they must be considered and obeyed by you in arriv-

*Withdrawal of Testimony.*

ing at your verdict, and while your verdict must be
found in accordance with such instructions and the evi-
dence in this case, you are," etc.

It is contended the judgment must be reversed be-
cause the court permitted the question mentioned above
to be answered, despite the subsequent withdrawal of the
answer and the giving of the instructions quoted.

(a) The motion for new trial contains no complaint
of the action of the court. The only grounds of the mo-
tion relating to rulings on evidence are that (1) the court
admitted irrelevant, incompetent and immaterial testi-
mony offered by respondent, and (2) rejected
competent, relevant and material testimony
offered by appellant. In this case the evi-
dence complained of was actually withdrawn
almost as soon as given, three questions and answers in-
tervening. The point that the error in permitting the
answer, in the first place, was incurable error, despite
the withdrawal of the answer, is not fairly covered by the
complaint in the motion that the court admitted incompe-
tent testimony. It is only in exceptional cases that with-
drawal of testimony does not meet objections to its ad-
mission (Stauffer v. Railroad, 243 Mo. l. c. 321; Pennsyl-
vania Co. v. Roy, 102 U. S. l. c. 459), and a complaint
of the *admission* of evidence cannot be said to raise a
question as to the effect of evidence actually *excluded*.
The motion for new trial did not count upon the error now
pressed upon our attention.

(b) It may be conceded evidence as to respondent's
family was not admissible. In this case, however, the
evidence was expressly withdrawn, and then the court
immediately directed the jury not to consider it. In an
instruction given the elements of dam-
ages were specifically enumerated, and in
another the jury were told they must
obey the instructions of the court as the
law of the case. There was no evidence
of unfair intent in the asking of the question, no per-
sistence in asking it and no comment upon the answer
except the oral direction that the jury must not consider

it. The instructions on the merits and burden of proof also specifically limited the jury to the evidence in the case, thereby impliedly excluding any consideration of the withdrawn answer to the question objected to. In Stephens v. Railroad, 96 Mo. l. c. 215, considering the admission of evidence as to plaintiff's family, this court expressly said: "We have no doubt but the trial court may exclude improper evidence during the progress of the trial, or by an instruction at the close of the evidence, and when this is done, the fact that such evidence was heard by the jury will not operate as a reversal of the judgment." The evidence was admitted in that case, though the court directed the jury not to consider it in making up their verdict. It was said in the opinion: "We do not say that this judgment should be reversed alone on the ground of excessive damages; nor do we say that it should be reversed because of the evidence before noted, had a specific instruction as to the measure of damages been given; but in view of the very general instruction as to damages, and the amount of the verdict, we cannot escape the conclusion that the incompetent evidence had its effect." In Wojtylak v. Coal Co., 188 Mo. l. c. 287, the court, considering a like question, held that the withdrawal of evidence inadvertently admitted "will ordinarily have the effect of curing the error." It then pointed out the happenings in the trial in connection with the evidence in question, and added: "While it may not of itself have been reversible error, the manner of getting it before the jury was unfair practice." In Stauffer v. Railroad, supra, it was held the withdrawal of evidence improperly admitted cures the error ordinarily and that this is a good working rule unless exceptional circumstances are present, such as to call "for a reversal as the only cure." In Pennsylvania Co. v. Roy, supra, the United States Supreme Court held that evidence erroneously admitted could be eliminated effectively by a direction in the judge's charge that it must not be considered by the jury. The court, through Mr. Justice HARLAN, concluded thus: "The presumption should not be indulged that the jury were too igno-

rant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury and commence anew. A rule of practice leading to such results cannot meet with approval."

From these decisions and others and on principle it must be concluded that this record does not bring the case within the rule upon which appellant relies. There are no exceptional circumstances taking it out of the rule that, ordinarily, the withdrawal of erroneously admitted evidence leaves no ground for reversing the judgment on account of such admission.

(c) The question whether the objection first made to the question was legally sufficient to present a question to the trial court need not be considered. The fact of the debatableness of that question goes, in all **Insufficient Objection.** events, somewhat to explain the original ruling and the failure to withdraw the answer until the amplified objection was made.

II. It is contended it was error to permit respondent to testify that uncoupling the air-hose would apply the brakes. It is urged that there was no evi- **Uncoupling Air-Hose.** dence that any employee was in a position to uncouple the air-hose and the evidence amounted to basing one presumption upon another.

No objection was made to the question until after the answer was in. The question was direct and the answer responsive. Respondent testified the uncoupling would set the brakes. Then he was asked: "How quickly?" Appellant then objected to testimony on the point because there was no allegation that anything of that kind was done at the time. This was overruled. Then respondent answered the question. "How quickly?"

And in doing so said that uncoupling the air-hose sets all the brakes back of that point and "stops the train right there." No objection was made to this. Under the rule (1) the objection was too late, and (2) the objection now made was not made at the trial. Again, the objection is not sound. The petition merely charged, generally, that the stop was made "carelessly, negligently and suddenly, with unnecessary violence and in disregard of the usual custom and practice," and without warning to respondent. Respondent's effort was to show that there were but two ways in which the stop could have been made—setting the air-brakes (1) from the engine, or (2) by disconnecting the air-hose. There was evidence the train was uncoupled and moving out of the siding almost as soon as respondent fell. The disconnection of the air-hose was necessary to the uncoupling of the train. The train was equipped throughout with air-brakes, and the evidence is that the air-brakes were working well, and it was shown there was nothing about the grade or length of the train or speed, etc., to prevent an ordinary stop being made. It was perfectly competent for respondent to prove, if he could, that the only things which could account for the violence of the stop were such as to render appellant accountable. The engineer testified he applied the air-brakes, and the conductor testified he "made the cut," i. e. uncoupled the cars, including the uncoupling of the air-hose. There is no basing of presumption upon presumption, and the allegations of the petition were amply broad to let in the evidence.

III. Complaint is made of the following instruction:

"If you find for the plaintiff, in estimating the amount of his damages, you should take into consideration, in connection with all the circumstances and facts in the evidence, the bodily pain and suffering and mental anguish, if any, endured by him, resulting from the injuries received; the character and extent of his injuries, and whether they are permanent in their nature; the extent, if any, to

*Instruction on Damages.*

which he has been prevented and disabled by reason of said injuries from working and earning a livelihood; and if, from the evidence, you believe and find that his injuries are reasonably certain to cause him pain and anguish· in the future, and reasonably certain to impair or lessen his ability to work or labor in the future, you should take said facts into consideration also. And if you find for the plaintiff you should find for him in such sum as in your judgment, under all the evidence in the case, will reasonably compensate him for the injuries received, not to exceed the sum of $25,000.''

(a) It is urged this instruction permitted the jury to consider facts not shown in evidence. This argument is based upon the clause "you should take into consideration, *in connection with all the circumstances and facts in the evidence,* the bodily pain,'' etc. The contention is that this falls within what was said in Keeline v. Sealy, 257 Mo. 1. c. 527. An examination of that case shows that the portion of the opinion relied upon received the sanction of only two of the then judges of this Division. Further, it was not said the instruction was reversibly erroneous because of the feature thought to be analogous to one in the instruction in the instant case. Again, this instruction closes with a direction to the jury to find for the sum they believe to be just ''from all the evidence in the case.'' Also, other instructions specifically informed the jury the burden was on plaintiff to ''prove his case by the greater weight of the credible evidence.'' The point is ruled against appellant.

(b) It is insisted it was error to include the phrase ''not to exceed the sum of $25,000.'' Cases are cited. In this case the court specifically instructed the jury that ''the mere fact that plaintiff seeks to recover the sum of $25,000 is no evidence whatever of the amount he is entitled to recover, if anything, nor is it any evidence that he is entitled to recover any sum whatsoever.'' In addition, it has been consistently held such a clause in an instruction, following the petition, is not reversible error, whatever its effect upon the question of excessive-

ness of damages.    [Kinney v. Met. St. Ry. Co., 261 Mo. l. c. 114, et seq.]

(c) The criticisms of instruction 6 for respondent need not be examined.    In every material respect in which it is not similar to an instruction asked by appellant it is supplemented and aided by such instruction in such manner that the jury could not have been misled to appellant's prejudice.

Instruction Common to Both Sides.

IV. It is insisted the verdict is against the great weight of the evidence and that this, in connection with the asserted excessiveness of the verdict and errors in the trial, requires a new trial.    The allegations of error mentioned have already been dealt with, and we have found no prejudice to appellant's rights of which it can now complain.    Neither does the record show the verdict to be against the weight of the evidence.    There is no dispute that respondent, in the course of duty, was upon the car and that he fell or was thrown therefrom and was injured. The evidence tends to show he was standing, at his post, near the middle of the top of the caboose and that the moving train came so suddenly to a stop as to throw him half the length of the car and off the rear end of it. This is his own testimony. Persons in the car at the time testified in the case.    One boy was thrown from a seat upon which he was sleeping.    One man testified he had ridden on freight trains a great deal and he never saw such a stop and shock except once in a wreck.    The witnesses characterized the stop as an awful jolt, a hard crash, etc.    One occupant of the car saved himself from being thrown from the car by holding to the seat "with both hands."    It is said one of these witnesses should be discredited, because he testified he was thrown to the east when the car, moving westward, stopped suddenly. His testimony gave no suggestion of intentional falsity. He evidently erred in the testimony mentioned.    It is quite unreasonable to think he would concoct a story and include such an error.    He was clearly a man of intelli-

Weight of Evidence.

gence. The natural conclusion from his testimony is that he was lying upon the seat, running along the side of the caboose, probably trying to sleep, and that he got directions confused after the sudden shock which drove his head against the partition or end of the car. No witness for appellant was in the car. The engineer and fireman and head brakeman, all at or near the front of the long train, testified there was no shock that they felt. The conductor declared he did not know, being away from the train. In view of all this testimony it is difficult to understand why it is thought the weight of the evidence is with appellant. The point is not of great consequence in view of our conclusions upon other matters with relation to which it is pressed, but it is so insisted upon that we have set out the substance of the vital evidence.

V. The judgment for $10,000 is said to be ''grossly excessive.'' Respondent was injured December 29, 1913. From that time until February 21, 1914, he was treated at home by one of appellant's surgeons. A few days thereafter he was sent to a hospital and stayed **Excessive Judgment.** there twelve days, and then was at home under the same treatment for a week, until about March 18, 1914. Since this time respondent has walked upon crutches. The injury is to the knee. It has caused respondent much suffering and continues to do so. The testimony of several surgeons is that there is a bony growth in the joint which prevents the leg being straightened. Dr. T. E. Potter, a practitioner of forty years' experience, testified respondent couldn't flex his knee; ''it comes out about half way, or a little more, and that is as far as it will go; and even by force, you can't press it out;'' that it was not very painful, but that there was enough pain to prevent success in efforts to flex the knee; that he thought the injury permanent and didn't believe he could give respondent any relief by an operation; that the case was such that he would not operate; that an operation resulting in a perfectly stiff leg might be performed, but he didn't know that would be any im-

provement; that the limb is "better than no limb at all" and that it will be a serviceable leg except for the crook in it.

Dr. Kenney thought the leg would not get any straighter, but the "trend" would be for respondent to grow accustomed to it and "as years go past it would get a little better;" that he "wouldn't say he would get entirely free from pain" and that respondent would not have a "good, serviceable leg."

Dr. Byrne thought respondent might be relieved by an operation; didn't know what the result of such an operation would be; no such operation had been performed in St. Joseph, but that it had been performed by Dr. Murphy of Chicago; that the knee is painful and will continue so as long as there is any motion in it.

Dr. Campbell testified the knee was "anchylosed, almost," very little movement in it; that it was a permanent injury and that, as for an operation, "most cures in that kind of case are imaginary;" that the result of an operation would probably be a "rigid knee joint."

Two of appellant's surgeons testified the knee would get well if respondent would go to bed and submit to have "extensions," i. e., weights upon it; that the foreign substances in the joint would be absorbed. There is, therefore, substantial evidence respondent's leg is held in a bent or crooked position by a foreign bony substance in the joint resulting from his injury; that this is permanent and that an operation will do him no good; that he has suffered much pain and will continue to suffer. The exact position of the leg is not made entirely clear. It was clear to the jury and the trial court. If it is bent as Dr. Potter's testimony indicates, and there is no reason to doubt his accuracy, the leg is of no value so far as walking is concerned. In other words, there is substantial evidence that respondent, so far as the question of damages is concerned, has, for all practical purposes, lost the use of his leg from the knee down. In these circumstances a judgment for $10,000 cannot be said to be excessive, particularly in view of the failure

of the record to put clearly before us what was so clearly before the jury and trial court. The judgment is affirmed. All concur, except *Bond, P. J.,* not sitting.