## CLARENCE O. HURST v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

### Division Two, March 13, 1920.

1. **NEGLIGENCE**: Instruction: Measure of Damages: All Facts and Circumstances. An instruction telling the jury that in estimating plaintiff's damages they will take into consideration his physical injuries "as shown by the evidence, together with all the facts and circumstances detailed in evidence," does not give the jury a roving commission, and is not misleading or prejudicial or erroneous.

2. **VERDICT**: Excessive: $15,000 for Loss of Foot. A conductor of a freight train, thirty-nine years of age, at the time in good health, receiving from $140 to $150 per month, who had never worked at any other occupation, in 1916 attempted to climb upon a moving car for the purpose of releasing a defective brake; the hand-hold gave way; one foot was thrown under the wheel and crushed, and he received injuries to his back from which he still suffers intense pain; the foot was amputated midway between the ankle and knee, and at the trial a year later the amputation had not completely healed, he was unable to successfully use an artificial limb, was still using crutches and suffering pain, and was employed about a garage at twenty dollars a month. *Held*, that a verdict for $15,000, after having been reduced from $20,000 and then approved by the trial court, cannot be held to be excessive.

3. ———: ———: **Former Approval for $10,000: Increased Cost of Necessaries.** For personal injuries the law attempts to afford a fair compensation in value for the losses sustained, and that means the value must be measured in money, which is a fluctuating and variable standard. Reduced to money-value compensation means the purchasing power of the essentials of life, such as rent, clothing, food and fuel, during a given eriod of time; and the fact that the court ten or twenty years ago refused to approve verdicts for the loss of a foot in excess of $10,000, is no sufficient ground for disapproving one for the same loss for $15,000 at a time of radical changes in social and economic conditions and increased comparative costs of life essentials: and where the life-expectancy of plaintiff exceeds ten years and his previous earning capacity had approximated $1800 a year and is now reduced to $240, and there is no showing of prejudice or passion on the part of the jury, and their verdict in 1917 for $20,000 for the loss of a foot in 1916 is reduced to $15,000 and then approved by the trial court, who saw plaintiff and was in a better position to determine the extent of his injuries, the appellate court will not say that the verdict was excessive.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

AFFIRMED.

*H. J. Nelson, M. G. Roberts* and *E. M. Spencer* for appellant.

(1)   Plaintiff's instruction on the measure of damages was erroneous in that it permitted the jury to take into consideration "all the facts and circumstances detailed in evidence" in determining the measure of recovery.   The jury was instructed that in assessing the damages they should take into consideration certain proper elements, to wit, physical injuries, mental and physical pain and, in addition thereto, "all the facts and circumstances detailed in evidence."   Such a roving commission was improper, misleading and prejudicial.   (2)   The verdict even as reduced by the court on the motion for new trial from $20,000 to $15,000, was excessive.   Ostertag v. Union Railroad Co., 261 Mo. 479;  Kinney v. Metropolitan St. Ry. Co., 261 Mo. 116;  Farrar v. Metropolitan St. Ry. Co., 149 Mo. 227;  Brady

v. Railroad Co., 206 Mo. 540; Newcomb v. New York Central, 182 Mo. 727; Lessenden v. Mo. Pac. Ry. Co., 182 Mo. 267.

*Mytton & Parkinson* for respondent.

(1) Plaintiff's instruction on the measure of damages is correct and proper and has many times been approved by this court: Phelps v. Zinc Co., 218 Mo. 585; Harmon v. Donohue, 153 Mo. 275; McNamara v. Transit Co., 106 Mo. App. 349; Sidekum v. Wabash Ry. Co., 93 Mo. 400. (2) The verdict of $20,000, reduced by a *remittitur* to $15,000, and approved by the trial judge for that amount, is not excessive, but a modest verdict for the injuries to respondent. Shohoney v. Railroad, 231 Mo. 131; Oglesby v. Mo. Pac. Ry. Co., 150 Mo. 137; Yost v. Union Pacific Ry. Co., 245 Mo. 252. A verdict of $30,000 today would not have the purchasing value of a verdict of $15,000 five years ago. Turnbow v. Kansas City Railways Co., 211 S. W. 41; Smith v. Kansas City Southern, 213 S. W. 481; Hulse v. St. Joseph Belt Ry. Co., 214 S. W. 156.

WILLIAMSON, J.—This is a suit in damages for personal injuries. The petition is in the usual form. The answer is a general denial. The verdict is for the plaintiff in the sum of twenty thousand dollars. Defendant's motion for a new trial was overruled, but plaintiff was required to enter a *remittitur* in the sum of five thousand dollars, which he did, and judgment was rendered for the sum of fifteen thousand dollars. From this judgment defendant appeals. The facts are as follows:

The plaintiff was in the employ of the defendant company as a conductor on a freight train. While so employed, the plaintiff observed that a brake on one of the freight cars was not working properly. Desiring to release the brake, plaintiff attempted to climb upon the car for that purpose. At the end of the car there were two devices called "grab-irons," apparently in-

tended to be used in climbing the car. Plaintiff stepped upon one of these, and it, being defective, gave way under his weight and left him hanging by his right hand, with his feet swinging on the ties between the rails. After a few moments, plaintiff's hold gave way, and he fell. He was unable, in falling, to throw himself clear of the moving train, and his left foot was ground beneath the car-wheels, necessitating amputation about midway between the knee and the ankle. He was taken to a hospital at ,Chillicothe, and was confined there, under the constant care of physicians and a nurse, for three weeks. After leaving the hospital, the wound was treated daily by the physician for several weeks. The ground upon which plaintiff ·fell, in falling from the car, was frozen, and in addition to the injuries to his leg he claims to have sustained a permanent injury to his back, from which he suffers intense, though intermittent, pain. He also sustained various minor cuts and bruises upon his head and body. The wound caused by the amputation had not completely healed at the time of the trial, and plaintiff still suffered from it, and being a large and heavy man, was unable successfully to use an artificial limb. The injuries were received on the 24th day of February, 1916, and plaintiff was still using crutches when the case was tried in March, 1917. At the time of the trial he was employed about a garage, at a wage of twenty dollars per month. At the time he was injured, plaintiff was thirty-nine years of age, in good health, weighed two hundred and ten pounds, and was earning one hundred and forty-five to one hundred and fifty dollars per month. He had never worked at any other occupation. No other facts are necessary to an understanding of the questions arising on this appeal.

I. The first point assigned by appellant as error is the action of the trial court in giving the following instruction in behalf of respondent:

"If the jury find for the plaintiff and further find from the evidence that plaintiff was not, himself, guilty

of any negligence or carelessness contributing to or causing his injury, they will assess his damages at such sum as they may believe from the evidence will reason-ably compensate him for the injuries sustained by him, if any, as shown by the evidence; and in estimating such damages the jury may take into consideration the physical injuries to plaintiff, if any, as shown by the evidence, their nature and extent, and whether temporary or permanent, as shown by the evidence, the mental and physical pain and suffering the plaintiff has endured, if any, and will reasonably be expected to endure in the future, if any, as shown by the evidence, together with all the facts and circumstances detailed in evidence.''

*Measure of Damages.*

This instruction is claimed by appellant to be erroneous because it contains the words, ''together with all the facts and circumstances detailed in evidence.'' The vice of the instruction is said to be that it gives the jury a roving commission, and is therefore improper, misleading and prejudicial.

A similar instruction, in which the same thought was expressed in the words, ''in connection with all the facts and circumstances in evidence,'' was given in the case of Salmons v. St. Joseph & Grand Island Railway Company, 271 Mo. 395, 197 S. W. 35, and was there held not to be error. Substantially the same instruction was also given and held not to be erroneous in the following cases to-wit: Phelps v. Zinc Company, 218 Mo. 572, 1. c. 584; Harmon v. Donohoe, 153 Mo. 263, 1. c. 271; McNamara v. St. Louis Transit Co., 106 Mo. App. 349, 1. c. 352. The reasoning of these cases need not be repeated here. We rule this point against appellant.

II. Appellant's second assignment of error is that the amount of the verdict, even after being modified by the court, is excessive. The amount of the verdict, it will be recalled, was twenty thousand dollars, which the court reduced to fifteen thousand dollars, and rendered judgment for that sum. This court has always exercised the power, on what it

*Excessive Verdict.*

deemed proper occasions, to reverse judgments because of excessiveness, or to require a *remittitur* as a condition of affirmance. The difficulty, however, is to determine the circumstances which render the use of that power appropriate. There is in this case no complaint in this court of any improper argument on the part of counsel for the prevailing party, nor any suggestion, unless it be in the amount of the verdict itself, of passion or prejudice on the part of the jury. The bald question presented for our decision is whether or not the verdict of the jury, even after having been abated by the trial court, is still so excessive that we ought not to allow it to stand.

In determining this question, we should not overlook the fact that twelve men, presumably honest and intelligent, sitting as jurors, awarded the respondent twenty thousand dollars. The trial judge, while considering that amount excessive, nevertheless approved the verdict to the extent of fifteen thousand dollars. It must be admitted that our opportunity to judge of this matter is not so good as that of the jury and the court below. However, when we look into similar cases upon which this court has passed judgment, there is, prior to 1918, a suggestive uniformity running through them. We are aware that the citation of similar cases may shed but little light upon the case under consideration, because, peculiarly in matters of this sort, each case is a law unto itself, but a brief review may be of interest. In 1897, in the case of Hollenbeck v. Mo. Pacific, 141 Mo. 97, this court approved a verdict for the loss of a leg amputated below the knee, in the sum of ten thousand dollars. In 1906, for a similar injury in the case of Brady v. Railroad, 206 Mo. 509, a verdict for fifteen thousand dollars was reduced by the court to ten thousand dollars, and affirmed. In 1908, in the case of Swearingen v. Mining Co., 212 Mo. 524, the plaintiff for similar injuries was awarded ten thousand dollars by the jury, and that judgment was affirmed. In 1914, in the case of Kinney v. Metropolitan Street Ry. Co., 261 Mo. 97, a verdict in favor of the plaintiff for fifteen

thousand dollars for the loss of a leg was affirmed for ten thousand dollars. In 1914, in the case of Ostertag v. Union Pac. Ry. Co., 261 Mo. 457, for the loss of a leg, plaintiff recovered a verdict of fifteen thousand dollars, which was reduced by this court to ten thousand dollars, and affirmed. In 1917, in the case of Salmons v. St. Joseph & Grand Island Ry. Co., 271 Mo. 395, 197 S. W. 35, for an injury to the leg not necessitating amputation, but leaving the leg permanently bent at the knee and the lower leg useless, ten thousand dollars was allowed by this court. In 1918, in the case of Miller v. Harpster, 201 S. W. 854, where the injuries resulted in a permanent shortening of the leg to the extent of three or four inches, this court allowed a verdict of fourteen thousand dollars to stand.

Respondent, in seeking to uphold the judgment of the lower court, forcibly calls our attention to the greatly diminished value of money under the conditions now so widely prevalent, and insists that the amount of the verdict fixed by the jury is not out of harmony with our decisions upholding verdicts for ten thousand dollars for similar injuries, at a time when the purchasing power of money was much greater than it now is. This argument calls for consideration.

The dollar is, at best, merely a unit for the measurement of values. It is a fluctuating and variable criterion, and therefore an imperfect one. Statisticians and political economists have devised a unit of measurement which, while necessarily imperfect, is yet more accurate than the dollar for gauging values. This unit is arrived at, broadly speaking, by taking the money cost of certain essentials of life, such as rent, clothing, food and fuel, during a given period of time, and comparing it with the cost in money of like essentials of like quantity and quality during a like antecedent period. The relative purchasing power of the dollar is thus ascertained, and its fluctuations are thus shown. Courts cannot, of course, follow the ordinary variations of the money-market, as brokers and merchants do, but when radical, material and apparently

permanent changes in social and economic conditions confront mankind, courts must take cognizance of them —not too hastily, lest that which seems to be permanent should prove to be transient; nor yet too tardily, lest justice fail. The humane and just intent of the law is at all times to afford fair compensation to one who has suffered wrong. Compensation means compensation in value. It will not do to say that the same amount of money affords the same compensation when money is cheap as when money is dear. The value of money lies not in what it is, but in what it will buy. It follows that if ten thousand dollars was fair compensation in value for such injuries as are here involved, twenty years ago, when money was dear and its purchasing power was great, a larger sum will now be required, when money is cheap and its purchasing power is small. How much larger, will depend upon the difference in value (that is, in purchasing power) of money now and then. That money to-day has much less purchasing power than it had twenty, or even ten, years ago, admits of no dispute, and we are not justified in disclaiming judicial knowledge of a world-wide condition, seen and known of all men everywhere. If that be true, then if we to-day allow the same amounts in money that we allowed in like instances ten or twenty years ago, we are following our decisions of that day in letter, but departing from them in spirit. We are warned, upon excellent authority, that "the letter killeth, but the spirit giveth life." [II. Corinthians, 3-6.] Other courts of ability and standing have deemed it their duty to take present-day conditions into consideration in passing upon problems similar to that with which we are now dealing. Thus, in Eckles v. Edison, 139 Ill. App. 75, l. c. 81, it is said:

"It is impossible to measure with accuracy the pecuniary compensation adequate for a permanent injury of this character. The expenses of living have been increased of recent years and the earning power of money diminished. A verdict and judgment in a

suit for personal injuries allowing excessive damages ought not to be permitted to stand, but in the present case our conclusion is that the judgment is not so manifestly excessive as to warrant interference.''

In Dale v. Railway & Light Co., 121 La. 946, l. c. 955, the Supreme Court of Louisiana said: ''The amount awarded by the jury is greater in proportion than this court has been in the habit of allowing, but, considering, as we are bound to do, that the purchasing power of money is less than it has been in the past, we are of the opinion, that there should be judgment for $7,500.'' [19 L. R. A. (N. S.) l. c. 632.]

A similar utterance by the same court may be found in Rogers v. Lumber Co., 129 La. 899. We have also in recent decisions, recognized the same conditions.

''Appellant asserts that this court has never allowed damages for personal injuries in excess of $25,000, and states it as if that were a definite rule. There is no definite rule laid down by this court in any case; each individual case has been determined upon its own facts. . . . In the Gordon case the injury occurred in 1904 and in this case in 1914, about ten years later. Twenty-five thousand dollars in 1904 was a much larger sum in purchasing power than that sum in 1914. While the injury in the Gordon case was probably more painful and more serious in its results, we are not prepared to say that a verdict of $25,000 by the trial court was excessive.'' [Smith v. K. C. So. Ry. Co., 213 S. W. l. c. 486.] A forceful paragraph from a dissenting opinion of WALKER, J., in Hulse v. St. Joseph Ry. Co., 214 S. W. l. c. 156, is pertinent here upon several points, in addition to the particular one under discussion:

''Limited as an appellate court is, of necessity, to the cold and irresponsive letter of the record, it is far less capable of justly determining the extent of an injury in a case of this character than the trial jury. In this case the jury not only heard the injured man and his witnesses testify as to his hurt, but they saw his condition. . . . Human injuries admit of no

Hurst v. Burlington Ry. Co.

parallels, and there can be no such cases. The impair-
ment of a faculty or function for which legal redress
may be sought, although seemingly similar in two dif-
ferent cases, may be as widely different as are the
individuals who are injured. . . . Besides, measur-
ed by a purely commercial standard, $12,000 to-day
is no more than a $7,000 verdict five or ten years ago.''

These utterances are cited as showing the trend
of judicial thought.

In the case at bar, the respondent's earning ca-
pacity has been reduced from approximately eighteen
hundred dollars per annum to about two hundred and
fifty dollars per annum. The money loss from this
source alone would aggregate in ten years more than
the amount of the judgment awarded by the trial court,
and respondent's life-expectancy at his age, thirty-
nine, and in his condition of health, which was good,
would far exceed ten years. The pain, both physical
and mental, which he has already endured, and which,
from the character of his injuries, he will certainly
endure in the future, must also be taken into considera-
tion. After mature reflection, we are unwilling, in this
instance, to pronounce our own judgment, based only
upon the printed page, to be so far superior to that
of the jury and the trial judge as to justify us in substi-
tuting our judgment for theirs, particularly in the ab-
sence of any claim of misconduct, prejudice, passion or
corruption in the trial below. This court has laid down
the rule that it will not interfere with the action of
trial courts upon questions of this sort, unless the
amount allowed is shocking to the judicial conscience, or
is so excessive as clearly to show that it is the result
of prejudice and passion. [Partello v. Railroad, 217
Mo. 645, l. c. 659; Adams v. Mo. Pacific Ry. Co., 100
Mo. 555, l. c. 569.] We are not prepared to say that
the judgment in this case merits either condemnation.
We therefore rule this point against appellant.

No other questions are presented for our de-
termination. For the reasons stated, the judgment
should be affirmed. It is so ordered. All concur.