OLIVER LOUIS SALLEE v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—12 S. W. (2d) 476.

Division One, December 31, 1928.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

Page number: 801

*Abbott, Fauntleroy, Cullen & Edwards* and *Charles P. Noell* for respondent.

SEDDON, C.—Plaintiff (respondent) brought this action against the defendant railroad corporation to recover damages for personal injuries suffered by him on March 8, 1924, while he was in the employ of defendant as a switchman in defendant's railroad yards in the city of St. Louis. The action is brought under the provisions of the Federal Employers' Liability Act and the Federal Safety Appliance Act. It is not disputed by defendant (appellant) that the action properly falls within the purview of those two acts of Congress, and hence it stands unquestioned that the action was well brought. Besides, the evidence herein shows that both plaintiff and defendant were engaged in interstate commerce at the time of plaintiff's injury, and that the railway car which injured plaintiff was in interstate transit.

The petition charges negligence on the part of defendant as follows: "The defendant hauled and permitted to be hauled and used on its line a car which did not comply with the aforementioned United States statute (Act of April 14, 1910, Chap. 160, Sec. 2), in that the hand-brake was so defective, insecure and inefficient that while plaintiff was on top of the car, which car was used in interstate com-

merce, and, while plaintiff was attempting to use the said hand brake, the said hand-brake broke, causing the plaintiff to fall from the top of the car, which was moving at the time, injuring plaintiff as hereinafter described'' in said petition. The petition prays damages in the sum of $85,000. The answer is a general denial.

The evidence of plaintiff tends to show that, as a member of defendant's switching crew, he was engaged in making what is known in railroad parlance as a ''running or flying switch'' with an open coal car, numbered C. N. J. 81532. On commencing such switching operation, the car is coupled to the switching-engine, and immediately after the switching-engine has passed over the switch junction, the switch is thrown and the car is quickly uncoupled from the switching-engine, thus permitting the car to pass onto the cross-over switch and thence onto an adjacent track by reason of the momentum given to it at the commencement of the switching movement. It was the duty of plaintiff to board the car before the switching operation, and, after the operation had been completed, to bring the car to a stop by means of a hand brake on the west, or front, end of the car. It was shown in evidence that the car in question, numbered C. N. J. 81532, was loaded with machinery, and that the shipment of machinery originated in the State of Oklahoma and was consigned to an industrial plant on defendant's railroad line in the city of St. Louis. The car in question was delivered to defendant by a connecting carrier in the city of St. Louis on March 7, 1924, the day before plaintiff's injury, to be delivered by defendant at the plant of the consignee of the shipment, which was located on defendant's railroad line. There was evidence to the effect that the staff of the hand-brake on said car was bent, or out of alignment, on the day the car was delivered to defendant by the connecting carrier, and that the car was tagged with a ''bad order tag,'' nailed on the side of the car near the hand-brake, on which card was written, ''Brake staff bent.'' Plaintiff testified that he stepped upon the footboard of the switching-engine and caught hold of the hand-hold on the car, C. N. J. 81532, and pulled himself onto the end platform of the car, through which platform the staff of the hand-brake passed; that he stood near the middle of the platform, at the front, or west end, of the car, near the brake staff; that, when the car had passed about half way through the cross-over switch, he took up a little slack on the brake; that the brake staff ''was a little bent, not very much;'' that he put his weight on it, and as he did so the brake staff broke; that there was ''a three-eighths-inch hole through the brake staff, and it broke off right at this hole;'' that the car was then moving at a speed of about ten or fifteen miles an hour; and that the breaking of the brake staff caused plaintiff to fall off, and in front of, the car, and across the rail of the switch

track, resulting in his left leg being run over and crushed by the wheels of the car, and in other injuries to be presently mentioned. There was also evidence that the brake staff broke in two just above the ratchet wheel, at a point where a three-eighths-inch cotter-key passed through the staff; that the upper or severed portion of the broken brake staff was found lying near the body of plaintiff and just outside the switch rail; that both surfaces of the break in the staff (that is, the portion remaining on the car and the severed portion of the staff) disclosed that "part of the break had rusted and the other part was fresh," indicating that there had been a partial crack or break in the staff prior to the day of plaintiff's injury. The foregoing is a sufficient statement of the evidentiary facts bearing upon the cause of plaintiff's fall and injury. Other evidence, bearing upon the nature and extent of plaintiff's injuries, will be mentioned and discussed in the course of our opinion. No evidence was offered on behalf of the defendant.

The submission of the cause to a jury resulted in a unanimous verdict for plaintiff and against the defendant railroad corporation, assessing plaintiff's damages in the sum of $40,000. Prior to the overruling of defendant's motion for a new trial, the trial court ordered plaintiff to file and enter a remittitur in the sum of $10,000 as of the date of the original verdict and the judgment thereon, and the remittitur being so filed and entered by plaintiff, defendant's motion for new trial was overruled and the original judgment was ordered to be vacated and set aside, and a new judgment was entered in favor of plaintiff and against defendant in the sum of $30,000, the latter amount to bear interest from the date of the original judgment, October 15, 1925. Defendant was allowed an appeal to this court from the judgment so entered.

I. During the direct examination of the witness Charles Corbett, who was employed by defendant as a switchman, and who testified on behalf of plaintiff, the following occurred:

"Q. Were you working for the Frisco Railroad on March 7, 1924? A. I was.

"Q. That is, March 7th? A. March 7th. I remember it very well.

"Q. Mr. Sallee was injured the next day, March 8th, but you don't know anything about that, do you? A. No, sir; I don't know about that.

"Q. Did you have occasion to handle C. N. J. car 81532 on March 7, 1924? A. What was that number?

"Q. 81532. A. Yes, sir.

"Q. Where were you handling that at? A. Well, I got a slight injury with that car.

804

"Mr. Stewart: If your Honor please, I desire to move that be stricken out.

"Mr. Noell: Q. I want to ask you—

"Mr. Stewart: Wait a minute.

"The Court: I will sustain the motion.

"Mr. Noell: I want to ask this witness if he handled this car. We want to show, your Honor please, by this witness he was injured by the same brake staff the day before.

"Mr. Stewart: I object to that and move the jury be discharged by reason of the prejudicial statement made by counsel for plaintiff.

"Mr. Noell: Showing this company had knowledge of the defective condition of that brake staff the day previous to the plaintiff being injured.

"The Court: Let him state what the condition of the brake staff was.

"Mr. Stewart: Has your Honor ruled on my motion?

"The Court: I will overrule the motion to discharge the jury. To which ruling of the court defendant duly excepted.

"The Court: I will ask the jury to disregard the statement of the witness that he was injured on that car.

"Mr. Stewart: I am objecting to the prejudicial statement made by counsel for the plaintiff in this case in the presence of the jury. That was the ground of my objection.

"Mr. Noell: My statement was simply the condition of this brake staff the day previous.

"Mr. Stewart: You stated something else in addition to that.

"The Court: I will instruct the jury the statements of counsel are not considered evidence in this case, and ask them to disregard the statements of counsel and the statement of the witness.

"Mr. Stewart: The statement of counsel may be prejudicial whether it is evidence or not, your Honor.

"The Court: I will overrule the motion to discharge the jury. To which ruling of the court defendant duly excepted.

"Mr. Noell: Q. State what condition you found that brake staff in on that car the day previous? A. Well, it was—we estimated it—

"The Court: Don't say that.

"A. It was bent out of line.

"Mr. Noell: Q. About how far out of line was it? A. Eight inches. That is what we figured it when we made out our report.

"Q. What is that? A. We put that on our report. . . .

"Q. What were you going to do with this car? A. I was going to let the brake off.

"Q. What was the occasion of that? A. We wanted to handle it.

"Q. Whereabouts was this brake staff bent on this car? A. Just where it comes through the end sill; just above the sill.

"Q. Did you examine it closely at that time? A. No, sir.

"Q. Were the car inspectors for the Frisco Railroad located down there at that time? A. I couldn't say where they was at that time. They was supposed to be.

"MR. STEWART: I object to what they were supposed to be.

"THE COURT: Sustained. It will be stricken from the record and the jury will disregard that—they were supposed to be there.

"MR. NOELL: Q. Did you do anything to the brake staff one way or another? A. No, I went to the hospital.

MR. STEWART: If your Honor please, I desire to object to that and move that be stricken out.

"THE COURT: That will be stricken out as not responsive. You were asked whether you did anything to that brake staff. A. I did not."

Appellant assigns as reversible error the refusal of the trial court to discharge the jury because of the alleged prejudicial and harmful statements and conduct of plaintiff's counsel in the examination of the witness Corbett, and because the testimony elicited from said witness was outside the issues in the case. It is true that, under the Federal Safety Appliance Act, it is the absolute and positive duty of defendant to maintain the hand-brakes (and certain other named appliances) of all cars hauled or used on its railroad line in an operative and efficient condition, and therefore the use of care and diligence on defendant's part in discovering and repairing defects in such appliances is no defense to an action brought under the Federal act (Delk v. St. Louis-San Francisco Ry. Co., 220 U. S. 580, 586; Chicago, Burlington & Quincy Ry. Co. v. United States, 220 U. S. 559, 575; Carter v. Railroad Co., 307 Mo. 595, 605; McAllister v. St. Louis Merchants Bridge Terminal Ry. Co., 25 S. W. (2d) 791; hence defendant's knowledge of the defective condition and inefficiency of the hand-brake was not an issuable fact in the case. But the record discloses that defendant did not object to the testimony of the witness Corbett, or to the examination of plaintiff's counsel, upon the ground that such testimony was immaterial and irrelevant to any issue in the case, or ask to have such testimony withdrawn, or excluded, for such reason, or for any other reason. If the answers of the witness to counsel's interrogation were not responsive, and therefore were objectionable for such reason, nevertheless they seem to have been merely voluntary statements of the witness and the jury were directed by the trial court to diregard the unresponsive answers or statements of the witness. As respecting the statements made by plaintiff's counsel in the presence of the jury, the trial court admonished the jury that the statements of counsel were

not to be considered as evidence in the case, and the jury were told by the court to disregard the statements of counsel. In view of the fact that the trial court admonished and directed the jury that such statements of counsel were not to be considered as evidence in the case and, therefore, were to be disregarded by the jury, we do not believe that the incident referred to herein called for the discharge of the jury by the trial court. Such incidents and occurrences, during the course of a trial, call for the exercise of a sound discretion by the trial court, and unless it clearly appears that there has been an abuse of discretion in the denial of the request to discharge the jury, and that such abuse of discretion worked some actual harm or prejudice to the complaining party, the ruling of the trial court does not constitute reversible error. [38 Cyc. 1477; Boyer v. Railroad Co. (Mo. Sup.), 293 S. W. 386, 388; Orscheln v. Scott, 106 Mo. App. 583, 585.] We find no reversible error in the refusal of the trial court to discharge the jury because of the incident complained of, and the assignment must be denied.

II. Error is assigned in the giving to the jury of plaintiff's Instruction No. 1, which told the jury that, "in estimating and determining the measure of his [plaintiff's] damage, if any, you may take into consideration, *in connection with all the facts and circumstances in evidence,* the character and extent of plaintiff's injuries, if any, and whether they are permanent in their nature; the extent, if any, to which he has and will be prevented and disabled by reason of such injuries from working and earning a livelihood for himself, and may find for him such sum as in the judgment of the jury, *under all the evidence in the case,* will fairly and reasonably compensate him for the injuries, if any, not exceeding, however, the amount prayed for in plaintiff's petition." (Italics our own.)

It is urged by appellant that the instruction is erroneous because of the inclusion of the two italicized clauses. Appellant argues that an action brought under the Federal Employers' Liability Act is not penal in its nature, but is compensatory only, and hence the consideration of the jury, in estimating plaintiff's damage, should be limited to the evidence bearing solely upon the nature and extent of plaintiff's injuries and the impairment of his earning capacity. In other words, it is argued that the jury, in estimating the amount of the compensation to be awarded plaintiff by their verdict, should have given no weight or consideration whatsoever to any facts or circumstances in evidence not bearing directly upon plaintiff's injuries and the impairment of his earning capacity; hence, appellant insists that the instruction is prejudicial in its effect, and the giving thereof to the jury is reversible error, because it distinctly told

the jury that, in estimating and determining the measure and amount of plaintiff's damage, they might take into consideration "*all the facts and circumstances in evidence.*" Appellant relies upon the decision of this court, en banc, in May v. Railroad Co., 284 Mo. 508, 530, wherein an instruction on the measure of damages was criticised because it told the jury to consider, along with other matters to be considered in estimating the plaintiff's damage, "all the other facts and circumstances in evidence." The plaintiff in the May case was a married woman and a mother, and she sued to recover damages for personal injuries. It was shown in evidence that she was rearing several children, some of whom were small and one was an infant, and we remarked that "the jury may have thought those were facts to be weighed on the issue of the amount to be awarded." The judgment was reversed and the cause remanded for retrial upon grounds other than the error in the instruction on the measure of damages, as to which latter ground we said that "we might pass over this error, had no other occurred prejudicial to defendants." We have ruled, however, in several recent cases, that the giving of an instruction on the measure of damages similar to the one criticised in the May case, and almost identical with that given to the jury herein, does not constitute reversible error, where there are no facts or circumstances in evidence which can be said to excite the sympathy, or to engender the bias and prejudice, of the jury. [Salmons v. Railroad Co., 271 Mo. 395, 406, 197 S. W. 35; Hurst v. Railroad Co., 280 Mo. 566, 570, 219 S. W. l. c. 567; Zini v. Terminal Railroad Assn. (Mo., Ct. en Banc), 250 S. W. 47, 49; Sacre v. Railway Co. (Mo., Div. I), 260 S. W. 85, 87.] We find no facts or circumstances in evidence herein which, in our opinion, tended to excite the sympathy of the jury, or to engender a bias and prejudice on the part of the jury against the defendant. Besides, if defendant believed that the instruction, in the form and language aforesaid, might be misleading to the jury, defendant should have requested an instruction advising the jury in more explicit language respecting the measure of plaintiff's damage, or otherwise limiting the amount of his recovery, or specifically excluding from their consideration such facts and circumstances in evidence as defendant deemed inapplicable and irrelevant to a determination of the amount of recovery. [Jablonowski v. Mfg. Co., 312 Mo. 173, 196; Powell v. Railroad Co., 255 Mo. 420, 454; Laycock v. Railways Co., 290 Mo. 344, 357; Sang v. St. Louis, 262 Mo. 454, 463; Browning v. Railway Co., 124 Mo. 55, 72; Hoover v. Railway Co., 227 S. W. 77, 79.] The assignment of error must be denied.

808

III. Lastly, it is urged by appellant that the verdict of $40,000 was so grossly excessive as to indicate bias and prejudice on the part of the jury, and to necessitate a reversal of the judgment, notwithstanding the remittitur of $10,000 made and entered by plaintiff in the circuit court; and it is furthermore urged that the later judgment for $30,000 is still excessive. In considering and ruling such question, a brief resume of the evidence respecting the nature and extent of plaintiff's injuries is necessary.

Plaintiff's chief injuries consisted of the amputation of his left leg below the knee; a fracture of the fibula, or small bone, of the right leg below the knee; and a cut upon the head. Dr. Ernst, a physician specializing in X-ray diagnoses, testified that there was a complete amputation of the left lower leg, below the knee, except the upper third thereof. He testified that the X-ray photograph showed "a translucency or thinness of the bone of the left knee joint, indicating a state of lowered nutrition of the bone." The X-ray photograph of the right leg showed evidence of "an old fracture of the upper end of the right fibula, and apparently this fracture was comminuted—a number of bones broken; the right knee joint shows evidence of an old fracture, with considerable bone callus formation of the upper end of the small bone of the lower leg, the fibula, just below the knee."

Dr. Hoge, a neurologist specializing in diagnoses of nervous and mental diseases, testified to certain tests which he made in examining the plaintiff; that plaintiff was continually rubbing the stump of the amputated leg; that witness observed a very distinct scar on the left side of plaintiff's forehead, beginning outside of the hair line and extending into the hair; that there was evidence of tenderness in this scar on manipulation; that there was also evidence of pain upon pressure over the occipital nerves in the back of the head, and also in the neck, and in the small of the back in the region of the spine; that tests of the reflexes indicated that the reflexes were increased and over-active; that the abdominal reflex was less active on the right side of plaintiff's body than on the left; that there was an abnormal reflex in the large toe of the right foot, causing the toe to turn backward, denoting an injury affecting the motor nervous tract in the brain and the spinal cord, but the reflex was slight, and not as pronounced as in the case of complete paralysis; that such a reflex is frequently found in cases of minor injuries; that, in testing the body of plaintiff for sensation, the patient flinched on the right side more than on the left side, and the left half of plaintiff's body was not so sensitive to the prick of a pin as was the right half of the body; that from the foregoing observation and examination, witness believed plaintiff was suffering from some disease or injury of the

central nervous system, consisting of the brain and spinal cord; that there was no external evidence of a fracture of the skull; that witness's observation of plaintiff for a period of a year disclosed "no present indication of any improvement" in his condition, and the "general results of the examination would indicate that he had had a substantial brain injury."

Plaintiff testified: "My skull was cracked open about from the forehead back about four inches to the rear of my head; my back, I can't lie on my left side at the present time; my back is injured and I ain't got no strength in my back to amount to anything; and my legs cramp all the time; my right leg cramps all the time and this leg is never still a minute, it works all the time, I bled an awful lot; I can't put my weight on my left knee, it pains me so much; it bothers me all the time, night and day, and never no rest in it; the right knee is the same way; I have an awful time with both of them; I can't get around good; if I go any distance at all, it (the right knee) gives out on me; I am able to bend my left knee, but not very much; the spinal cord was injured in the fall; about a week after I was home from the hospital an abscess broke out on my head and I doctored it; I went to a doctor named Walker, he is dead now; it was about four weeks, I guess, before it healed up; as to the present condition of my head and brain, I am not satisfied any place I sit; I always want to be on the go, here and there; it seems as though I can't get my mind settled to one thing; I can't sit down and read the paper any length of time at all; it seems as though I am not satisfied, whatever I do; I can't lie on my right side at all; it pains all the time, and aches, starts from the small of my back and runs down into my hip and my leg; my kidneys—I can't hold my water at all; I have to urinate pretty regular; I am very nervous; I have not been able to earn anything since this occurred; I had an earning capacity before I was hurt—about $275 to $300 (a month)—about $200 from the railroad company, and the rest was selling silk hose; I was an agent for silk hose; I have pain all the time."

Cross-examination of plaintiff developed the fact that plaintiff was born on October 19, 1868, and therefore his age, at the time of his injury, was fifty-five years, four and one-half months. He made written application to defendant for employment as a switchman on August 31, 1923, in which application he stated the date of his birth as being October 19, 1885, thereby misrepresenting his age by seventeen years. Plaintiff testified that he was told by one of defendant's employees, at the time he filed his written application for employment with defendant, that the age limit of employment of switchmen is forty years.

Diligent counsel for the respective parties have cited an array of decisions of this court, and of other appellate courts, which they claim to support their respective contentions—plaintiff, on the one hand, contending that the judgment of $30,000 herein is entirely reasonable and fairly compensatory; and defendant, on the other hand, contending that the amount of the verdict and the later judgment herein is such as to shock the conscience of a court of justice. We have carefully and laboriously scanned the many decisions cited by counsel in support of their respective contentions. However, decided cases are not controlling, but merely advisory, on the question of excessiveness of verdict and judgment, for it is well nigh impossible to lay down any hard-and-fast rules respecting the amount of compensatory damages which will govern every case. Each case must be ruled on its own peculiar facts, and the reasonable and sound judgment of the appellate court applied thereto. We do not wish to minimize plaintiff's injuries, for the record indicates that they are bad enough. But we also recognize (as a human frailty) that an injured party, himself, is somewhat prone to exaggerate the nature and extent of his own injuries, which may be entirely natural, and, perhaps, somewhat humanly characteristic of us all. However, the testimony of the medical witnesses herein would seem to have fairly and fully enumerated and described plaintiff's injuries, and the extent thereof. There is no evidence that plaintiff was put to any personal outlay, or expenditure, for hospital, or for medical, attention. The evidence indicates that plaintiff had reached the age (more than fifty-five years) when he could not expect to follow much longer his vocation as a railroad switchman. In truth, the evidence discloses that he found it necessary to misrepresent his age in order to obtain the very employment in which he was injured. After a review of the many decisions cited by counsel herein, and in view of the evidentiary facts herein, and considering the elements of damage which the jury were allowed to take into account, we have reached the conclusion that an allowance of $17,500 is ample and fair compensation for the bodily injuries and the special damage suffered by plaintiff, and that the judgment herein is excessive by $12,500. We do not believe, however, that the amount of the verdict, and of the judgment as originally entered, calls for a retrial of the cause. We have not recently followed our earlier practice of remanding a cause for mere excessiveness of verdict, but lately have followed the practice of reducing the judgment by forced remittitur to such amount as comports with our sound judgment, based upon all the evidentiary facts and circumstances. [Varley v. Taxicab Co., 240 S. W. 218, 224.]

If the plaintiff (respondent), within ten days from the filing of this opinion, will enter and file a remittitur in this court in the sum

of $12,500 as of the date of entry of the judgment *nisi*, the judgment will be affirmed as of the date of its entry in the circuit court for the sum of $17,500; but, in the event such remittitur is not so entered and filed as directed herein, the judgment *nisi* will stand reversed and the cause will be remanded for retrial as of the date of the filing of this opinion. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.