KURN et al. v. CAMPBELL et al.

No. 29470. March 10, 1941.

Rehearing Denied April 23, 1941.

*112 P. 2d 386.*

J. W. Jamison, of St. Louis, Mo., and Cruce, Satterfield & Grigsby, all of Oklahoma City, for plaintiffs in error.

Speakman & Speakman, of Sapulpa, for defendants in error.

OSBORN, J. This action was instituted in the district court of Creek county by Thomas F. Campbell, hereinafter referred to as plaintiff, against James M. Kurn and John G. Lonsdale, as trustees of the estate of the St. Louis-San Francisco Railway Company, a corporation, hereinafter referred to as defendant company, and Charles M. Hagan, hereinafter referred to as defendant, wherein plaintiff sought to recover damages for personal injuries sustained when an automobile in which he was riding collided with a passenger train of defendant company at a railroad crossing. The issues were joined, the cause was tried to a jury and a verdict was rendered in favor of plaintiff against defendant company, but the jury found in favor of defendant Hagan. From a judgment entered pursuant to the verdict, defendant company has appealed.

Plaintiff alleged that defendant company operated a railroad line from Oklahoma City to Tulsa, Okla., which line passed through the town of Stroud, Okla.; that there is a section line and public highway which crosses the main line of said railroad one mile west of the town of Stroud; that the railroad runs in a general easterly and westerly direction and the highway runs in a northerly and southerly direction. It was alleged that the railroad crossing at that point is unusually dangerous and hazardous in that the highway as it

approaches the railroad track makes a sudden and abrupt ascent; that the crossing had been permitted to lapse into a state of bad repair; that there is a curve in the railroad track at the point where the highway crosses the track and that the track is banked sharply toward the north, the north rails being several inches lower than the south rails; that ruts had been permitted to form in the highway as it approached the railroad track, thus causing the planks placed across the highway to project above the surface of the highway a distance of two or three inches; that said planks had become old, worn, and warped so as to make the crossing very rough, thus constituting a place that would probably stop or stall an automobile in approaching said crossing from the south; that defendant maintained but one cross-arm sign at said crossing; that the same was located to the north of the track and east of the highway; that owing to the abrupt ascent in approaching the crossing said sign was not visible to one approaching the crossing from the south at night while driving an ordinary automobile; that as a train approached the crossing from the west it passed through a deep cut which obstructs the sight and sound of the train until it is within about 200 feet of said crossing to one approaching the same from the south; that although the highway is a main traveled thoroughfare, defendant negligently failed and neglected to erect and maintain at said crossing an electric signal device, a watchman or other means of warning of the approach of trains. It was further alleged that the defendant Hagan was the engineer in charge of the train; that he had knowledge of the dangerous condition of the crossing and that he neglected to use reasonable care as he approached said crossing by slackening the speed of the train or by giving repeated sounds of the bell or whistle. The plaintiff testified that on the night of January 6, 1938, at about 7 o'clock p. m., which was after dark, he was on said highway and approached said crossing from the south; that he had never been upon this road before; that he knew there was a railroad crossing in the vicinity but did not know its exact location; that as he approached the crossing he was unable to see the cross-arm sign and did not realize he was near a track until he went up a steep grade in the road and found himself upon the track; that as the wheels of his automobile came upon the track he felt a bump and his car came to a stop and he heard the blast of the train; that he found that his motor had stopped; that he opened the door and threw himself out of the car as quickly as he could. It appears that the train ran over both of plaintiff's feet and left them in a mangled condition and that plaintiff's car was carried down the track a distance of 660 yards, where the train finally came to a stop.

Plaintiff's testimony as to the nature and extent of his injury was corroborated by the evidence of medical men. It appears that it was necessary to amputate portions of both feet at "about the middle of the feet"; that plaintiff was unable to use crutches and that it was impossible to fit him with artificial limbs without further amputation of his lower limbs at a point about seven inches below the knee; that his only means of moving about was by use of a wheel chair or by being carried; that he was in continuous pain except when he was asleep. Plaintiff testified that he was 53 years of age at the time of the injury; that he was a practicing attorney engaged in the practice of law at Bristow and also operated a dairy; that his average annual income previous to his injury was about $3,500 or $3,600; that since the injury he had been unable to do any work in the office and was unable to assist in the management of the dairy.

For reversal of the judgment defendant company contends, first, that the verdict of the jury is not supported by sufficient evidence and that the court should have entered judgment in favor of defendant company upon the verdict of the jury. As heretofore stated, the jury found in favor of defendant Hagan, the engineer of the train. Defendant

company argues that where the liability of a master is predicated solely upon the principle of respondeat superior, it is error to render a judgment against the master upon a verdict of a jury in favor of the servant, citing Anthony v. Covington, 187 Okla. 27, 100 P. 2d 461; Consolidated Gas Util. Co. v. Beattie, 167 Okla. 71, 27 P. 2d 813; Shell Pet. Co. v. Wilson, 178 Okla. 355, 65 P. 2d 173; St. Louis & S. F. Ry. Co. v. Dancey, 74 Okla. 6, 176 P. 209; Chicago, R. I. & P. Ry. Co. v. Reinhart, 61 Okla. 72, 160 P. 51.

A similar contention was made in the case of St. Louis & S. F. Ry. Co. v. Simmons, 116 Okla. 126, 242 P. 151, which we herein adopt as applicable. See, also, Chicago, R. I. & P. Ry. Co. v. Pedigo, 123 Okla. 213, 252 P. 1095; St. Louis & S. F. Ry. Co. v. Eakins, 141 Okla. 256, 284 P. 866.

Both the engineer and the fireman testified that the train was scheduled to make a speed of about 60 miles per hour at the place where the collision occurred, and that the train was actually making about 55 miles per hour when it struck plaintiff's automobile. It therefore appears that the only independent act of negligence of defendant Hagan, which is eliminated from our consideration by the verdict of the jury, was the failure to give sufficient warning signals of the approach of the train. A review of the record as a whole, however, discloses that there is but little contention on this point, as will hereinafter appear.

Defendant company argues that, after elimination from consideration of the independent acts of negligence on the part of the engineer, there is no competent evidence in the record to sustain the verdict against the defendant company. In this connection, it appears that the acts of negligence relied upon for recovery by plaintiff are, first, the speed of the train; second, the unsafe condition of the crossing; and, third, the failure to provide statutory signposts or warning signals. Without reviewing the evidence in great detail, it is sufficient to say that plaintiff offered competent evidence to sustain his contention that the crossing was improperly maintained.

There is ample evidence in the record to the effect that the crossing was unusually dangerous. As heretofore stated, it was located on a curve of the railroad tracks. It was conclusively shown that a train approaching from the west, as in the instant case, could not be seen from the crossing until it was within 457 feet thereof, since it was approaching upon a curved track through a cut. Plaintiff's testimony to the effect that the cross-arm sign was so located that it could not be seen at night by one approaching from the south was corroborated by other witnesses who visited the premises at night for the express purpose of determining whether or not such sign was visible under the circumstances outlined by plaintiff, and no evidence to the contrary was offered by defendant company. It is therefore clear that there is ample competent evidence in the record to sustain the finding of the jury as to primary negligence on the part of the defendant company.

Complaint is made of the instructions to the jury with regard to the erection of signs or warning signals at the crossing. By instruction No. 12 the trial court instructed the jury as to the duty of the defendant company to erect the cross-arm sign provided by section 11959, O. S. 1931, 66 Okla. St. Ann. § 124, and further instructed the jury that it was the duty of the company to place the sign in such position that the same might be observed by a traveler on the highway at night who was traveling in the ordinary manner and exercising reasonable care and diligent effort to ascertain the location of a railroad crossing, and if defendants were careless and negligent in their failure to perform such duty and their carelessness or negligence constituted the proximate cause or contributed to the proximate cause of plaintiff's injury, such facts were to be taken into consideration together with all the other facts and evidence in determining the liabil-

ity, if any, of defendant. By instruction No. 13 the jury was instructed that the aforesaid statutory provision set forth the least care and caution which a railroad company is required to exercise and that the jury should take into consideration the various circumstances involved, including the speed of the train, the obstruction to the view, the location of the crossing, the location of the highway in regard thereto, the frequency with which the highway was traveled, and other attending circumstances bearing upon whether or not the railroad crossing was unusually dangerous to travelers upon the highway, and whether or not the statutory signal was sufficient to warn and advise a reasonably prudent man traveling along the highway and attempting to cross the crossing of the approach of the train; and whether or not a reasonably prudent person, under like and similar circumstances and engaged in the same business as that of the defendant, would have given some other or additional warning of the approach of the train in addition to the statutory signal and warning, and if defendant carelessly and negligently failed to give such warning which a reasonably prudent person under like circumstances would have given for the protection and safety of the plaintiff, and that if such carelessness and negligence was the proximate cause of plaintiff's injuries, and plaintiff was free from contributory negligence, the verdict should be for the plaintiff. In the case of St. Louis & S. F. Ry. Co. v. Prince, 145 Okla. 194, 291 P. 973, 71 A.L.R. 357, it was said:

"The statute which requires a railroad company to erect suitable signs of caution at crossings of its road with public highways, and prescribes the size, etc., of the letters to be printed thereon, was not intended to furnish a standard by which to determine in every case whether or not such company had failed to discharge its duty in respect to giving sufficient warning to the traveling public of the existence of such crossings and the probable approach of its trains. It was intended rather to prescribe the minimum of care which must be observed with respect to the erection and maintenance of signs or other signals of warning at all crossings."

See, also, authorities cited in annotation at 71 A.L.R. 369.

As we view it, the rule thus announced justifies the instructions hereinabove referred to. We have examined the various authorities cited and relied upon by defendant company and find them to be distinguishable from the instant case by virtue of the various factual situations presented therein. The authorities relied upon involve various judicial expressions regarding the duties of railroad companies in congested centers of population and point out that there is a substantial difference in the duty of railroad companies in maintaining such crossings than where there is involved a crossing over a country highway where there is only a small amount of traffic. Plaintiff does not contend that it was the duty of defendant to maintain gates or a watchman at the crossing involved herein, but contends that the signs maintained by the defendant were wholly insufficient in view of the dangerous character of the crossing, and we are of the view that the finding of the jury on this point is amply sustained by the evidence, and the instructions of the court referred to were proper under the well-established rule.

Defendant complains of the instruction relating to the measure of damages. In this connection it appears that the court, after stating the various elements of damage which might be considered in determining the amount which plaintiff would be entitled to recover, concluded with the following language: "and all other facts and circumstances and evidence before you, and then fix such sum as you think just and reasonable therefor; in no event, however, to exceed the total sum sued for on account thereof, to wit, $45,700." In the case of Hurst v. Chicago, B. & Q. Ry. Co., 280 Mo. 566, 219 S. W. 566, 10 A.L.R. 174, it was held:

"It is not error in instructing the jury upon the elements to be considered in

fixing the damages in a personal injury case, to conclude: 'As shown by the evidence, together with all the facts and circumstances detailed in evidence.'"

See, also, Pittsburgh, C. C. & St. L. Ry. Co. v. Carlson, 24 Ind. App. 559, 56 N. E. 251; Suell v. Jones, 49 Wash. 582, 96 P. 4; Consumers Lignite Co. v. Grant (Tex. Civ. App.) 181 S. W. 202; Dickinson v. Abernathy Furniture Co., 231 Mo. App. 303, 96 S. W. 2d 1086; 15 Am. Jur. 808; 17 C. J. 1067.

Other assignments of error relating to the instructions have been considered and are without substantial merit.

Upon motion for new trial, defendant raised certain questions relating to the qualifications of the jury. In this connection it was contended that one of the jury commissioners was disqualified; the commissioners did not proceed according to the directions of the statute in preparing the jury list from the tax rolls as provided by law, and by reason thereof the names of certain members of the jury who were on the panel, who were selected on the jury herein, and who signed the verdict did not appear on the personal tax rolls of the county. We do not find it necessary to pass upon the merits of these contentions. Chapter 4, O. S. 1931, Title 38 Okla. St. Ann., prescribes the qualifications of jurors and jury commissioners and the manner of preparing the jury list, drawing the names, and summoning jurors for service. Section 808, O. S. 1931, 38 Okla. St. Ann. § 13, provides, in part, as follows:

"A substantial compliance with the provisions of this chapter, shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, and summoning or empaneling the same, resulted in depriving a party litigant of some substantial right; Provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

The questions argued by defendant with relation to the qualifications of the jury could be raised only by a challenge to the panel. The question of whether or not the right to challenge the panel has been waived under circumstances such as presented here has not been before this court. It is observed, however, that the statute above quoted is a general statute. It has been held to be applicable to criminal cases and has several times been construed by our Criminal Court of Appeals. That court has consistently held that the right to challenge the panel is a personal right and will be held to be waived where the right is not exercised in the time and manner provided by law. Powell v. State, 60 Okla. Cr. 267, 63 P. 2d 113; Rhodes v. State, 42 Okla. Cr. 382, 276 P. 698; Michael v. State, 42 Okla. Cr. 124, 274 P. 900; Young v. State, 41 Okla. Cr. 226, 271 P. 426; Fooshee v. State, 3 Okla. Cr. 666, 108 P. 554; Queenan v. Territory, 11 Okla. 261, 71 P. 218, 61 L. R. A. 324, affirmed, 190 U. S. 548, 23 S. Ct. 762, 47 L. Ed. 1175. See, also, 31 Am. Jur., Jury, § 80, p. 614, and authorities therein cited; annotation 92 A. L. R. 1110.

These contentions are presented in connection with defendant's contention that the verdict is excessive and thus it is argued that detriment resulted to defendant in the irregularities in preparing the jury list and selection of the panel. We have considered the arguments advanced and are unable to concur in the conclusion. A situation of fact is presented which is controlled by the clear and explicit language of the statute as construed by the above-cited authorities. We hold, therefore, that since the matters were not presented to the court at or before the time the jury was sworn to try the cause, the objections to the panel cannot be urged upon motion for new trial or upon appeal.

We pass to a consideration of the proposition that the verdict was excessive. There is little dispute in the evidence as to the nature and extent of plaintiff's injuries. The jury was properly instructed as to the elements of damage which might be considered in determining the amount of the recovery.

Plaintiff was 53 years old at the time of the injury. He was a practicing attorney and maintained law offices at Bristow. He also conducted a dairy which was located southwest of that city. He testified that his earnings prior to the time of the injury were from $3,500 to $3,600 per annum. He had a life expectancy of 18.78 years. It appears to be conceded that plaintiff endured considerable pain and suffering and will continue to endure some pain and suffering in the future. The verdict of the jury was for $45,700, which was the full amount prayed for in plaintiff's petition. The evidence showed that his hospital and doctor bills were approximately $700. To sustain the verdict would require a finding that plaintiff's earning capacity was permanently and totally destroyed. We have heretofore pointed out that he was unable to use crutches, since the portions of his feet which were not removed were insufficient to sustain his weight and that he could not be fitted with artificial limbs without a re-amputation of the limbs about seven inches below the knee. It must be borne in mind, however, that plaintiff's income was not derived by physical labor. He was a professional man and manager of a business. It may be conceded that the injuries sustained would greatly impair his earning capacity. The evidence does not impel the conclusion that it was permanently and totally destroyed. The question of whether the verdict is excessive must be determined from the facts in the individual case. After consideration of the entire record herein, we are of the opinion that the verdict herein was grossly excessive and we are justified in inferring that there was prejudice and passion on the part of the jury from the magnitude of the verdict. Southern Kansas Stage Line Co. v. Crain, 185 Okla. 1, 89 P. 2d 968.

If plaintiff, defendant in error herein, within 15 days after the mandate is filed in the trial court, will file a remittitur of all of the judgment in excess of $25,-700, with interest from date of judgment in trial court, the judgment will be af-firmed. If the remittitur is not filed within the time allowed, the cause will stand reversed and remanded for a new trial.

WELCH, C. J., CORN, V. C. J., and RILEY, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. BAYLESS, J., absent.