The KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation,
Plaintiff in Error,

v.

Lula MARTIN, Administratrix of the Estate of Ezekiel Thomas Martin, Deceased,
Defendant in Error.

No. 36840.

Supreme Court of Oklahoma.

Feb. 14, 1956.

Kelly Brown, Muskogee, for plaintiff in error.

Green & Green, Rucker, Tabor & Cox, Jack M. Thomas, Tulsa, for defendant in error.

PER CURIAM.

The parties to this appeal will be referred to as they appeared in the trial court: Lula Martin, administratrix, as plaintiff, and the Kansas City Southern Railway Company, as defendant. The action arose from a railroad crossing accident near Redland, Oklahoma, in which the plaintiff's husband was killed.

There was testimony, although conflicting, from which the jury could reasonably have found the following facts: In the late morning of March 9, 1954, the deceased, Ezekiel Martin, and Mr. W. G. Flippin left their home in the deceased's 1951 Chevrolet pick-up truck to go fishing. Mr. Martin was driving. They drove to Redland, Oklahoma, intending to secure worms for bait nearby. The ranch to which they were going is just across the defendant's tracks from this small rural community. The crossing of the defendant contains three separate tracks approximately nine feet apart. The tracks run generally north and south and the road east and west. The main track is to the west, the second track is the main side track, and the track to the east is a loading track. The men drove the truck across the tracks and up to the ranch just a short distance from the crossing. They secured the information they needed concerning the bait and commenced to retrace their movements toward Redland. At this time they were proceeding in a westerly direction. From the ranch house there were several obstructions to the south of the road that prevented a clear view of the defendant's right of way. These obstructions continued up to the defendant's property. Immediately adjacent to the loading track was a scale house and loading chute with a gate on it that was open on this occasion across their line of vision. Just south of the crossing the defendant had spotted a gondola type coal car on the loading track. Except for occasional openings these obstructions prevented a view of the tracks to the south until the truck was almost upon the second or middle track of the crossing. Furthermore, this crossing was only some 800 feet north of the defendant's bridge across the Arkansas river which was constructed of steel girders and beams and was such that a train thereon was not clearly visible to one approaching the crossing from the east.

The crossing was rough. Among other specific conditions, the rails of the crossing were at least three inches above the road surface on the main track. Several witnesses for the plaintiff testified that the crossing was rough and that it was necessary to proceed slowly. One witness testified that on two occasions within the year vehicles driven by him had stalled while he was attempting to cross at this point. Mr. Flippin testified that they were proceeding across the tracks at less than five miles per hour and that they heard no warning signal. When the truck passed the loading track they discovered the train and heard it whistle:

"So by the time we cleared this boxcar, why the train whistled, and by that time why the car had stalled and he gave it the gas and someway or another it bounded up like that on the rough ground and stalled right in the middle—well, it wasn't in the middle—it was up on the main line, they called it the main line. When he whistled we couldn't tell

whether he was on the main line or what and so I stayed there as long as I could—I didn't know whether I could help him do anything or not, it all happened so quick—and I saw the train was so close—I looked up and saw the train was so close and I said the last thing I knew, 'Let's go!' So I left the truck and the next thing I knew there was a crash and I had just got back of the truck."

Mr. Martin was killed instantly. The jury returned a verdict in favor of the defendant engineer but against the defendant railroad, from which judgment this appeal is prosecuted by defendant railway company.

 The defendant argues three propositions. It is first asserted that there was no showing that any negligence of the defendant was the proximate cause of the injury and that the motion for an instructed verdict should have been sustained. There was ample testimony to establish the defendant's primary negligence in the maintenance of the crossing and in permitting obstructions to block the view of approaching trains. The evidence shows that this negligence placed the plaintiff's decedent in a position of peril on the crossing. The resulting collision was most assuredly the direct and proximate result of this negligence. There was ample evidence to submit both these issues to the jury under appropriate instructions. Whether the deceased was contributorily negligent, thus barring plaintiff's recovery, was for the jury to determine. Midland Valley R. Co. v. Townes, 179 Okl. 136, 64 P.2d 712; Kurn v. Campbell, 188 Okl. 636, 112 P.2d 386; Thompson v. Cooper, 192 Okl. 237, 135 P.2d 49; Kansas, O. & G. Ry. Co. v. Clark, Okl., 262 P.2d 426.

 Also without merit is the proposition that the court erred in admitting testimony of subsequent repairs to the crossing. This evidence was not offered by plaintiff in her case in chief. On behalf of the defendant, the section foreman testified that the crossing was not rough at the time of the accident and that he had been over it at least once a week since the accident and there had been no change in its condition except for the replacement of some ties. He also testified that he made no repairs unless they were needed. On rebuttal, the plaintiff offered evidence of repairs to the crossing only two months after the accident. This testimony was allowed by the court only after pointedly instructing the jury that it was admitted for impeachment purposes only and was to be considered for no other purpose. The general rule is that testimony of subsequent repairs is inadmissible to prove primary negligence unless it is first proved that the object repaired was in the same condition at the time of the repairs as at the time of the accident. This is not to say, however, that such testimony is not competent for other purposes. Here, the court strictly limited the testimony in its use by the jury. In view of all the evidence, this was not error.

 Finally, it is stated in the brief that certain remarks by counsel for the plaintiff were prejudicial. However, there is no record in the case-made showing the remarks or the defendant's objection to them. Counsel for the plaintiff contradicts the defendant's assertion as to the nature of the remarks. Under the well established rule of this court, prejudicial remarks of counsel and argument to the jury are not available as a ground for reversal unless objected to and exception taken at the time such remarks are made and the remarks and the exceptions thereto shown in the record of the trial. Duncan v. Vance Drilling Co., 191 Okl. 389, 130 P.2d 290.

The judgment is accordingly affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD, JACKSON, and HUNT, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner JAMES H. NEASE and approved by Commissioners JEAN R. REED and J. W. CRAWFORD, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in the conference, the foregoing opinion was adopted by the Court.